## Davis Howett by his father and next friend, Edwin Howett, *v.* Philadelphia, Wilmington and Baltimore R. R., Appellant.

*Negligence—Contributory negligence—Evidence—Question for jury.*

Whenever there is a conflict of testimony, or, for any cause, there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, negligence is always a question for the jury.

*Negligence—Railroads—Grade crossings—Question for jury.*

In an action to recover damages for personal injuries received at a grade crossing, the case is for the jury where the evidence for the plaintiff, although contradicted, tends to show that no bell was rung or signal given as the train approached the crossing; that a car was left standing upon the sidewalk where pedestrians passed over the track; that plaintiff in going around the car encountered a pile of dirt, snow and ice over which he stumbled; that he stopped, looked and listened before going upon the track; and that the night when the accident occurred was dark and foggy.

Argued Feb. 14, 1895. Appeal, No. 150, Jan. T., 1895, by defendant, from judgment of C. P. Chester Co., Aug. T., 1893, No. 104, on verdict for plaintiff. Before STERRETT, C. J., Mc-COLLUM, MITCHELL, DEAN, and FELL, JJ. Affirmed.

Trespass for personal injuries. Before HEMPHILL, J.

At the trial it appeared that plaintiff, a boy seventeen years of age, was injured on the night of February 8, 1893, at a grade crossing in the borough of Oxford. The evidence for the plaintiff tended to show that the night was dark and foggy, and that there was no light provided at the crossing, either by the railroad company, or the borough. A witness who was with plaintiff at the time testified that no bell was rung as the train approached the crossing, and that there was no light on the engine. At the crossing there were five or six tracks, and the company had left a car standing across the sidewalk which pedestriaans were in the habit of using. Plaintiff's testimony was in effect that he stopped, looked and listened, and in going around the car fell over a pile of dirt, snow and ice, and was caught by the engine and his leg crushed just above the foot.

The court charged in part as follows:

" The testimony was that after having lighted up the church

one or the other proposed a walk, they went down a square or so and around and came on to Hodgson street, they then passed up Hodgson street going west, and on the south side of the street, on a brick pavement; that just before they reached the crossing of the railroad company, just at the end of the brick pavement—and you will recollect a street crosses it there running parallel with the railroad, which is passed over by flagging —when at the end of this brick pavement they heard two taps of a bell, as they supposed, coming from an engine up in the neighborhood of the bridge at Broad street, that they proceeded on across this street until they came to the line of the first tracks of rails; then they tell you that they stopped, looked and listened, that they could hear no longer the ringing of the bell, that they did hear the steam shut off, and supposed that the engine had stopped. The stoppage there was testified to by one as being, in his judgment, about a minute. They then proceeded until they reached the car which impeded their progress on the board or plank walk which crosses the grounds of the railroad company, and then passed around to the end of the car, Miller being to the north and Howett on his left, and next the car to the south, where they had a clear view, as it appears to be uncontradicted by the witnesses on either side, from there up to and under the bridge. They tell you that they there again stopped for about a minute, stopped, looked and listened, heard no ringing of a bell or any noise of an engine, nor did they see any lights, and that then they attempted to cross the railroad track; that Howett in making the effort fell over the pile of dirt, or stumbled on the pile of dirt which was on the west side of the car, and was thrown on his face and across the railroad track, that he could not recover himself instantly, and while struggling to get up he was seized by the collar by his companion, but before he was able to raise him the engine had passed down and his foot was crushed. They have attempted, if this evidence is believed by you, to satisfy you, not only of the negligence of the company, but of the performance of the duty required by the plaintiff here on his part.

"Now, what is the answer of the company to this? Supposing the plaintiff to have made out to your minds a satisfactory prima facie case, what is the company's answer? The com-

pany's answer is, first, a denial of some of the material allegations of the plaintiff; and secondly, that the defendant's injury was brought about, partly at least, by his own negligence, that he contributed to the accident.

" What is the testimony on the part of the defence? The defence does not pretend to allege that there were any lights on this crossing, placed there either by the borough authorities or by themselves; nor do they pretend to say that there was any light upon the rear of the engine, upon the tender. But they do allege, and have attempted to satisfy you by the evidence of three witnesses at least, the engineer, fireman and car inspector, that the head-light of the engine was burning, and that the light from that head-light could be seen reflected on the right and the left of the engine, some say up as far as the bridge, others even beyond that distance. They have also produced witnesses to contradict the evidence of the plaintiff, that there was not a continuous ringing of the bell, that there were only the two taps, and they were the engineer and fireman. They testified that the bell rang continuously from the time they left the neighborhood of Broad street down until they reached the switch at the round-house. When weighing the testimony of these men, it is proper for me to caution you—as they have testified that the ringing of this bell continuously was a duty made incumbent upon them by the company, at crossings of this character, and that a failure to comply with that rule would mean in their judgment a discharge from the company's service—that, in weighing their testimony, you will consider how far that may have influenced them in testifying here to the strict performance of their duty, the omission of which would perhaps result in the loss of their employment and their livelihood. In addition to the testimony I have already spoken of, the company has called experts and attempted to satisfy you by men who have had experience about railroads, that what these two young men say about having stopped, looked and listened at the points which they named, particularly the last point, which was so close to the main track at the rear of the car, that it was utterly impossible for them to have so stopped, looked and listened, and done so in the manner the law contemplates by the exercise of their senses of hearing and sight, without both seeing and hearing the engine approach

ing.  They tell you that any person looking up that road, even on a dark night—because they contradict also the testimony of the plaintiff here as to the character of the night; the engineer and fireman, and I believe all the witnesses called on the part of the defence, testified that it was a dark and cloudy night, but deny that it was misty or murky—they say that even on a dark and cloudy night any one standing at the rear of that car must necessarily, if looking north, have seen the light reflected by this reflector, which they say was lit, and could not have failed to hear the engine approaching.  Several witnesses, you will recall how many, testified to those facts.  Of course if they have satisfied you that that is true, then the young men could not have stopped as they say, or if they stopped where they say they did, at the rear of the car, could not have exercised their senses of hearing and sight in the manner they should have done, and were consequently negligent and plaintiff cannot recover.  Another point that the defence makes to satisfy you further that they contributed by their own acts to this injury, is the interview had that very night, immediately after the accident, between Mr. Gettman, Pierson and Jones, and the young man Miller.  Mr. Gettman tells you that after the accident, when he ascertained who was hurt, he went to see him, and being unable to procure from him any account as to how it happened—for he says it was his duty to report the accident and the circumstances attending it immediately, or as soon as possible, to the superintendent—being unable to get any satisfactory information from Howett, he went to hunt for his companion young Miller, whom he understood was with him. He said that he did not know Miller, and in his search came across Mr. Pierson, the constable of the town, and who is also employed around the crossing and at the depot, told him what they desired, and that when they found Miller, Pierson went across the street to him and called him to where Mr. Gettman and Mr. Jones were standing, opposite Brown's drug store; that there he, Gettman, asked him how it occurred, and that the young man in the course of his narrative stated that they heard the ringing of the bell and the noise of the engine.  If I recall it aright, all three of these men, whilst they vary in other portions of their testimony, testified to that fact, that he said that they heard the ringing of the bell and the noise of the

engine, but they thought they could get across, and that he did, and then turned around when he saw the engine was so close to warn his companion not to attempt to cross.  This testimony, you will recall, is contradicted by young Miller, who says that Gettman, who conducted this conversation with him, asked him about nothing except about the ringing of the bell, and that he told him they heard only two taps when they were at the end of the paved sidewalk."

Defendant's points were among others as follows :

" 2. The uncontradicted testimony in this case shows that if the plaintiff before going upon the tracks of the railroad had looked in the direction of the approaching locomotive, he could not have failed to see it, and he was, therefore, guilty of contributory negligence, and cannot recover in this action.  *Answer:* That point I must disaffirm.  I cannot say, as a matter of fact, that the facts alleged here have been proven.  The question is for your determination.  You are to ascertain what facts have been proven." [1]

" 3. The uncontradicted testimony in this case shows that if the plaintiff before going upon the tracks of the railroad had stopped and listened for the coming of the approaching engine, he could not have failed to hear it, and was, therefore, guilty of contributory negligence and cannot recover in this action.  *Answer:* That is a question for you, gentlemen of the jury, and I disaffirm that point." [2]

" 4. The plaintiff by his own testimony admitted that he heard both the ringing of the bell and the shutting off of steam of the approaching engine, and having ventured on the tracks of the railroad after being thus warned of the coming of the engine, he was guilty of contributory negligence and cannot recover in this case.  *Answer:* The questions of fact, gentlemen, are for you, and I must disaffirm that point." [3]

" 5. The plaintiff having by his testimony admitted that he heard both the ringing of the bell and the blowing off the steam of the engine, it was his duty to wait one or two minutes and allow the approaching engine to pass, and failing to do this, he was guilty of contributory negligence and cannot recover in this action.  *Answer:* That I must also disaffirm." [4]

" 6. Under all the evidence in this cause, the verdict of the

jury must be for the defendant.    *Answer:* That is also disaffirmed." [5]

Verdict and judgment for plaintiff for $6,000.    Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*John J. Pinkerton,* for appellant.—Plaintiff was guilty of contributory negligence: Myers v. B. & O. R. R., 150 Pa. 386; Butler v. R. R., 126 Pa. 163; Aiken v. P. R. R., 130 Pa. 380; Hauser v. Central R. R., 147 Pa. 447; Carroll v. Penna. R..R., 12 W. N. C. 348; Penna. R. R. v. Bell, 122 Pa. 64; Marland v. Pittsburg & L. E. R. R., 123 Pa. 487; Penna. R. R. v. Mooney, 126 Pa. 244; Blight v. Camden & Atl. R. R., 143 Pa. 10; Wilds v. Hudson River R. R., 24 N. Y. 440.

*Thomas W. Pierce,* for appellee.—Negligence is always a question for the jury, when there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them: Penna. R. R. v. White, 88 Pa. 327; Quigley v. Canal Co., 142 Pa. 388; McNeal v. Ry., 131 Pa. 184; Whitman v. Pa. R. R., 156 Pa. 175; Bare v. R. R., 135 Pa. 95; Ellis v. R. R., 138 Pa. 506; Neiman v. D. & H. Canal Co., 149 Pa. 92; Penna. R. R. v. Garvey, 108 Pa. 369; Quigley v. Canal Co., 142 Pa. 388; Hoffmeister v. R. R., 160 Pa. 568; Smith v. B. & O. R. R., 158 Pa. 82; Groner v. Canal Co., 153 Pa. 390; McGill v. Ry., 152 Pa. 331; Kraut v. Ry., 160 Pa. 327; Phila. & Reading R. R. v. Carr, 99 Pa. 505.

PER CURIAM, March 11, 1895:

Defendant company's contention here is substantially the same as below, viz: that the court should have withdrawn the case from the consideration of the jury by instructing them to render a verdict against the plaintiff on the ground that he was guilty of negligence which contributed to the injury of which he complains.    We are all of opinion that it would have been error to have done so, for the reason that, upon the controlling questions of negligence and contributory negligence, the testimony was quite sufficient to carry the case to the jury. A careful consideration of all the evidence has convinced us

that it tends to show that defendant's negligence was the proximate cause of plaintiff's injury. It has also satisfied us that while there is some evidence of contributory negligence on the part of the plaintiff, the testimony relating thereto is not of such a character as would have justified the court in declaring as matter of law that he was guilty of negligence which contributed to his injury.

These conclusions might be fortified by references to and discussion of the testimony, but that would consume time to very little if any purpose. Whenever there is a conflict of testimony, or, for any cause, there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, negligence is always a question for the jury. This case is clearly within the rule; and inasmuch as the questions involved were fairly submitted to the jury in a fully adequate and unexceptionable charge, the verdict should not be disturbed.

Judgment affirmed.