# Crane *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Grade crossings—"Stop, look and listen"—Contributory negligence.*

It is the duty of a railroad company in the running of its trains, to exercise care according to the circumstances, and when the railroad track crosses a much traveled street or highway, the company is bound to exercise a degree of care commensurate with the danger; to give some sufficient notice of the train's approach, and to moderate the speed of the train to such rate as, under the circumstances, is reasonably consistent with public safety.

In a case against a railroad company to recover damages for personal injuries or death at a grade crossing, where there is a disagreement among the witnesses as to whether a bell was rung, the question whether the failure to ring a bell is negligence, is a question for the jury to determine from all the circumstances in the case.

In such a case where there is evidence that the deceased stopped, looked and listened, before going upon the track, but the evidence is conflicting as to the place at which he stopped and as to the manner in which he started to cross, it is for the jury to determine, under the proper instructions of the court, whether the deceased did all that he

was bound to do upon the situation as he found it, and the circumstances in which he was placed.

Argued May 7, 1907. Appeal, No. 90, Jan. T., 1907, by defendant, from judgment of C. P. Warren Co., Sept. T., 1906, No. 21, on verdict for plaintiff in case of Pauline Z. Crane v. Pennsylvania Railroad Company. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before LINDSEY, P. J.

The opinion of the Supreme Court states the case.

The court charged in part as follows:

On May 25, 1906, the husband of the plaintiff in this case, Pauline Z. Crane, was killed while attempting to cross the Philadelphia & Erie Railroad, run and managed by the Pennsylvania Railroad Company, at Spring Creek, in Warren county. The suit is brought by Pauline Z. Crane, the wife of the deceased, and by her son.

It would appear from the uncontradicted testimony in the case that the defendant's employees were running an engine, which passed along by the Spring Creek station some time in the forenoon of May 25. The engine had been to Corry to help a freight train on the up-grade between Warren and Corry, and was returning to Warren with the engineer and fireman, who had charge of the engine, and was backing at the time of the accident.

*    *    *    *    *    *    *    *

Now, gentlemen of the jury, the plaintiff has offered testimony tending to show that the deceased, Mr. Crane, came up this road, which runs parallel to the railroad tracks, and turned down on the road which crosses the railroad tracks. And the plaintiff's testimony tends to show that after passing a little below or southerly from Donaldson's store, he stopped and looked and listened, and the plaintiff has called quite a large number of witnesses who testified to that fact. They have also, more or less of them, testified to what they could see from that point, looking up the track, or westward towards Corry on the track. And some of them tell you that looking

back of the depot, which would be northerly from the depot, and across the point of the hill, which comes down westerly of the depot, they could see the track for about 300 feet, and others put it less.   I do not remember of any of them putting it more than that.   And they mention the number of cars that they could see on the track, looking westward from the point where they saw the deceased stop.   Evidence is given by the plaintiff also to show that that was the usual place where people, traveling the public road, stopped to look and listen.   And some evidence is given to show that at no other point, going from that point towards the railroad tracks, could they see the track, looking westward, until after they passed the corner of the depot, and I do not remember of any evidence which showed that they could see up the tracks, and see the tracks, until after they passed the corner of the railroad depot.   If there is any, gentlemen, you will recall it.

The evidence shows that the deceased, Mr. Crane, passed along down on his wagon, was sitting back on the brake or hounds of the wagon, at the rear end, drove along towards the crossing—the evidence of the plaintiff I am speaking of now—and as he drove towards the crossing some of the testimony shows that he was looking up the track.   I believe there is no evidence which shows that he stopped after the point below Donaldson's store, but there is evidence to show that he looked up the track before attempting to cross the track, but not that he stopped his team.

Now it is claimed on the part of the plaintiff that the railroad company was negligent in the rapidity with which its employees ran the engine at that time, and also that it was negligent in not giving the proper signals that should be given in approaching a station like Spring Creek, and where there was a crossing at or near the railroad station. Now we call your attention, gentlemen, to the evidence generally on that point, without going over it all, or going over what each witness testified to.

*      *      *      *      *      *      *      *

The engineer testifies that he blew the whistle back near the whistling post, one long blast, and that he blew the signals, four for the block, which was a signal to the operator to give him the block.   He testified that those were blown.

And he testified that the bell was rung all the way down along there, after the whistles were blown. And, if I remember correctly, the fireman corroborated him in these respects. Others were called, who testified to hearing the long blast of the whistle, and some others, if I remember correctly, testified to hearing the other blasts, which was a signal to the operator for the block. You will remember how many there were, and their testimony exactly. And I think some of the witnesses called on the part of the defendant testified to the ringing of the bell. That, gentlemen, is for you, and you will recall who they were, and how many of the witnesses.

Now, gentlemen of the jury, we say to you, as a matter of law, that it was incumbent upon the railroad company that these signals should be given there. That is, the usual signal which is given in approaching a depot should be given, and that is, as stated by the railroad employees, one long blast, and there does not seem to be much dispute between the plaintiff's and defendant's witnesses but what that was given. The point where it was given the witnesses differ about somewhat.

Now, gentlemen of the jury, we say to you that if a whistle was blown there, it would be no matter what kind of a whistle, how many blasts, it would be notice to anybody, attempting to cross, that a train or engine was coming, and would be a warning to anybody who was attempting to cross.

[There is some evidence that the bell was not rung. If you find it was not rung, that would be an element of negligence on the part of the defendant company.] [4]

Now, gentlemen, your first duty will be to direct your inquiries as to the testimony in regard to negligence of the defendant. If the defendant was not negligent in the warning of the engine there that day, there could be no recovery by the plaintiff, and you would not have to go any farther in your investigations, but if you find from all of the evidence, taking all the evidence into consideration, that the defendant was negligent, in respect to not giving the proper signals, or the question of rapidity of running, which may also be taken into consideration by you, and you have heard the testimony on that subject, if you find that the defendant was negligent, then it is your duty to go farther and determine whether or not there

was any negligence on the part of Mr. Crane there, in crossing the road, or attempting to cross the railroad, which contributed in any way to his death.

And we say to you, as a matter of law, that it is the duty of any person, and was the duty of Mr. Crane that day, to stop, look and listen, before attempting to cross the railroad track. That is the imperative, binding rule of law upon everybody, before attempting to cross a railroad track, to stop, look and listen.

Now, you heard the evidence in relation to Mr. Crane's stopping just after he passed Mr. Donaldson's store, and looking and listening, and the testimony is, as I remember it, that that was from sixty to seventy feet from the railroad tracks. The majority of the witnesses put it, if I recollect right, about seventy feet, but perhaps it ranged from fifty to seventy feet.

Now, was that the usual place where a team stopped, and was it the place where Mr. Crane could get the best view westerly, up the railroad track, the direction from which this engine was coming ? If that was the best place and the usual place, he discharged his duty by stopping and looking and listening there, if you find that he did stop and look and listen. His duty is not wholly discharged by stopping and looking and listening at the usual place ; he must continue his vigilance until he gets across the railroad track. And it was his duty to look, and not only his duty to look, but to stop again if necessary. And the authorities say that if he cannot see without it, he must get off and go ahead of his horses, where he can see, and take those precautions. And it is for you, gentlemen, to take these matters all into consideration. Did he do that ? If he did not do it, it is for you to say whether or not he was guilty of contributory negligence.

The evidence, as I remember it, shows that he did look, he continued to look, but I do not remember any evidence that he either stopped, listened or got off of the wagon. But this question of whether or not he was guilty of contributory negligence is for you. But we say to you that that is the law, that it is necessary for him to take these precautions before crossing a railroad track. Now, gentlemen of the jury, take the evidence all into consideration, the evidence of the de-

fendant's witnesses on the subject of contributory negligence, as well as those of the plaintiff's, and determine from all of the evidence in the case.

I call your attention further to the situation, as shown by the testimony, past the corner of the depot. As I remember the evidence, it was about twenty-five feet from the corner of the depot to the railroad track. And there is evidence, on part of the defendant, that from a point a little south from the corner of that depot, from the place where the witnesses stated that they could see, that they could see up the track for quite a long distance; they put it from 500 feet to 800 feet, as I remember the testimony, that they could see up the track from those various points there, between the depot and the railroad track, where he looked.

*     *     *     *     *     *     *     *

If you find that he was not guilty of any negligence which contributed to his death, then he would be entitled to recover, if the railroad company was guilty of negligence. And if you come to the question of recovery, then you must consider his earning power. [Now, gentlemen, the law does not give you any definite means of measuring or determining that. You must determine it as best you can from the age of the decedent, who was fifty-five years old,] [3] and what you consider from the evidence that you have heard his earning power would be for the time which he might probably live. Sometimes mortuary tables are given as to the average length of time that a man would live (or what would be the average mortality of persons of that age), but this has not been given in this case, and you will have to figure it out for yourselves, if you come to that question, and you must use judgment and care if you reach that question, gentlemen, and figure out in a business-like way what would be his earnings per year for the period which you come to the conclusion might be an average period of a man's life who had reached that age. And you may take into consideration the health and physical constitution of the man, as shown by the testimony in determining that question, and what evidence has been given in relation to his earning power.

Defendant presented these points:

4. The evidence of witnesses on the part of the plaintiff,

who testified to not hearing the engine whistle, unless there were such circumstances that would call their attention to this fact, would be negative testimony, and if the jury find from the evidence that a number of witnesses on the part of the defendant testified to the fact of hearing the whistle blown, and also the bell on the engine ringing for this crossing, being positive evidence as against negative testimony, their verdict should be for the defendant. *Answer :* This, gentlemen, is answered in the affirmative, all except this last clause, " their verdict," etc. [1]

8. Under all the evidence the verdict should be for the defendant. *Answer :* This point is refused and the evidence is referred to you under the instructions which we have given you. [2]

Verdict and judgment for plaintiff for $7,750. Defendant appealed.

*Errors assigned* were (1, 4) above instructions, quoting them.

*J. Ross Thompson,* of *J. Ross Thompson & Son,* for appellant.—One witness, who hears the ringing of a bell, is worth more than a dozen witnesses who did not hear it : Urias v. Penna. R. R. Co., 152 Pa. 326.

Proof of excessive speed at a crossing, when accompanied by exhibition of facts, showing proper safeguards for the customary and ordinary use of the crossing, is insufficient to take a case to the jury on the question of negligence : Custer v. Baltimore & Ohio R. R. Co., 19 Pa. Superior Ct. 365.

We contend that there was such contributory negligence on the part of David Crane, deceased, the husband of the plaintiff, as would defeat the right of recovery : Penna. R. R. Co. v. Beale, 73 Pa. 504 ; Kinter v. Penna. R. R. Co., 204 .Pa. 497 ; Gray v. Penna. R. R. Co., 172 Pa. 383 ; Blotz v. Lehigh Valley R. R. Co., 212 Pa. 154 ; Sellers v. Ry. Co., 214 Pa. 298 ; Mankewicz v. R. R. Co., 214 Pa. 386 ; Urias v. Penna. R. R. Co., 152 Pa. 326 ; Harvey v. Erie R. R. Co., 210 Pa. 95 ; Carroll v. Penna. R. R. Co., 12 W. N. C. 348 ; Gangawer v. Phila. & Reading R. R. Co., 168 Pa. 265.

*D. U. Arird,* with him *Edward S. Lindsey,* for appellee.

OPINION BY MR. JUSTICE STEWART, June 3, 1907:

The plaintiff's husband was killed by a passing engine while attempting to cross the tracks of the defendant company at a public crossing with his team. The negligence charged in the statement was as follows : " And the said defendant, through the carelessness and negligence of its servants and employees on aforesaid date, to wit : May 25, 1906, carelessly, wrongfully and negligently ran or drove one of said defendant's engines rapidly, without giving warning, over and across said public highway at the crossing aforesaid, so that the said David Crane on said date, to wit : May 25, 1906, while passing along and upon said road or highway at the crossing aforesaid, using due care and caution, was struck," etc.

If we are to give the words here employed nothing beyond their exact and literal meaning, the charge of negligence was fully met and answered by the testimony of plaintiff's own witnesses, for a number of them testified that a signal by whistle was given at the accustomed place. A strict construction would make the charge mean that no warning whatever was given ; but it was evidently intended to charge that no adequate or sufficient warning as measured by the duty of the defendant under the circumstances was given. The learned trial judge so understood it ; the case was tried on this theory, and the absence of exceptions shows the defendant's acquiescence. Defendant's fourth point, the refusal of which is the subject of the first assignment of error, was not directed to this feature of the case ; it had reference, not to the charge of negligence contained in the statement, but to the law of the case, and was properly refused. The distinction made in the point between positive and negative testimony was correct enough, and so much of the point was affirmed, but it did not follow as a result that the verdict should be for the defendant.

There can be no fixed and invariable standard of duty either with respect to the rate of speed to be observed by railroad companies at public crossings, or the manner in which approach to such crossings is to be signaled. All that can be said is, that it is the duty of a railroad company in the running of its trains to exercise care according to the circumstances, and when the railroad track crosses a much traveled street or highway, the

company is bound to exercise a degree of care commensurate with the danger; to give some sufficient notice of the trains' approach, and to moderate the speed of the train to such a rate as, under the circumstances, is reasonably consistent with public safety. The law does not designate the mode in which these precautions against injury are to be exercised. This much was said in Lehigh Valley Railroad Co. v. Brandtmaier, 113 Pa. 610, and it has been many times repeated. In the present case while there was agreement between the witnesses that the whistle of the engine was sounded at or near the whistling post, more than a half mile west of the crossing, there was very positive disagreement as to whether it was sounded more than once, or whether any signal by bell had been given. One of plaintiff's witnesses testified that although the engine on this particular occasion was running at unusual speed, yet some of the customary signals were omitted. It could not be said as matter of law that the one whistle which witnesses on both sides agree was given, was an adequate warning; therefore it became a question for the jury to determine from all the evidence in the case whether the defendant had come short of its duty in this regard, and a submission of the question was unavoidable.

So to with respect to the question of the injured party's contributory negligence. An imperative duty rested upon him to stop, look and listen; and there was evidence going to show that he did this; but the contention of the defendant was that he did not do it at the places or in the manner that proper regard for his own safety would have suggested. Whether he did all that he was bound to do depended upon the situation as he found it, and the circumstances in which he was placed; and it became a question for the jury under proper instructions as to the law. The court's refusal to give binding instructions for defendant is the subject of the second assignment, and this is overruled.

The instruction of the court on the question of damages was meager; too meager perhaps to insure a full understanding by the jury of what the law contemplates in this regard. It is only necessary to advert to this feature of the charge with this expression of its insufficiency, to secure fuller instruction at another trial of the case which must be the result of the

manifest error which is made the subject of the fourth and last assignment.

In the general charge the learned judge instructed the jury as follows: "There is some evidence that the bell was not rung. If you find it was not rung, that would be an element of negligence on the part of the defendant company." However this expression may have been qualified in the answer to points submitted it stands out so conspicuously in the charge, and would necessarily be so misleading if uncorrected, that we cannot be sure that it did not influence the result. Whether the failure to ring the bell, if there was such failure, was negligence, became a question for the jury to determine from all the circumstances in the case; it was not for the court to declare it as matter of law.

Judgment reversed, and a venire facias de novo awarded.