Armstrong et al., Appellants, *v.* McGraw.

Argued March 5, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*A. Floyd Vosburg,* and with him *A. A. Vosburg,* for appellant.

*R. L. Levy,* and with him *Leon M. Levy,* for appellees.

OPINION BY JAMES, J., November 19, 1934:

The plaintiffs, John Armstrong and Catherine Armstrong his wife, brought an action against John McGraw for injuries received by Catherine Armstrong as a result of being struck by defendant's automobile.

The plaintiff on December 23, 1932, at nine o'clock in the evening, accompanied by her son Thomas, started to cross Wyoming Avenue, in Scranton, at the point of its intersection with Lackawanna Avenue. The traffic at this point was heavy and was being directed by two officers, one being stationed on the east curb and the other on the pedestrian crossing in the center of Wyoming Avenue.

The evidence offered by the plaintiffs was that Mrs. Armstrong and her son had proceeded to about the middle of the street along the pedestrians crossing, when they were stopped by the traffic officer stationed in the middle of the street, who later stopped the ve-

hicular traffic; the officer then directed the pedestrian traffic to proceed; that defendant's car proceeding southerly on Wyoming Avenue had crossed beyond the intersection and into Lackawanna Avenue about twenty feet; that plaintiff did not see the defendant's car until the son, seeing the car backing toward him, jumped aside, and on looking back saw his mother lying in the street; that they had no warning that the car was backing up, and heard no horn; that they were not looking for traffic from the direction from which defendant's car came, which was contrary to the general course of traffic; that Mrs. Armstrong suffered bruises on her face, leg, hip, and shoulder, and injury to the base of the spine which has caused her considerable pain so that she could not do her housework and walks with a limp, although there were no pathological or objective symptoms of injury to the spine.

Defendant's evidence is that upon being directed by a traffic officer to back up, he did so slowly after sounding his horn and looking back, and he contends that there was not such a showing of negligence as to warrant submission of the question to the jury.

We will not discuss each of appellant's numerous assignments of error, but will confine this opinion to the general lines of argument as set forth in appellant's paper books. The first of these is the question of defendant's negligence.

The testimony is conflicting as to whether or not the horn was sounded when defendant backed his car. Appellant contends that the testimony given by the plaintiff that she did not hear the horn is negative testimony and therefore not entitled to any weight as against positive testimony that the horn was sounded; that since the failure to warn is the only allegation of negligence, having failed to prove the allegation, plaintiffs' case must necessarily fall. We are, however, led

to the opposite conclusion. Plaintiffs' allegation of failure to warn is not rebutted by proof of a single sounding of the horn. It is to be observed here that it was just a few days before Christmas and that the pedestrian crossing was unusually crowded with Christmas shoppers, and it may be assumed that the vehicular traffic was correspondingly heavy. It is hardly open to dispute that a good deal of noise accompanies traffic at a busy intersection. It was the defendant's duty to give, *adequate* warning under the circumstances. The horn of an automobile, placed as it is at the front of the car, directs its sound forward. It may well be that in the noise of traffic a single blast of the horn might not be audible to persons to the rear of it, particularly in the case where they are not expecting a car to back up against the flow of traffic. In Fisher v. Amsterdam, 290 Pa. 1, 137 A. 797, it was said, "It was defendant's duty to sound his horn repeatedly when running his car backward in the street." And in Crane v. Pa. R. R., 218 Pa. 560, 568, 67 A. 877, "It could not be said as a matter of law that the one whistle which witnesses on both sides agree was given, was an adequate warning; therefore it became a question for the jury to determine from all the evidence in the case whether the defendant had come short of its duty in this regard, and a submission of the question was unavoidable."

Appellant contends that he performed his full duty and cites two cases to support his position. Sheldon v. James, 166 Pac. 8, was a case where the court was asked to give binding instructions that defendant was negligent. This was refused and the case was allowed to go to the jury. This of course does not substantiate the proposition that *defendant's* request for binding instructions would have been sustained. The case of Motor Co. v. Buffington, 203 S. W. 1013, held that it was incorrect to charge the jury that failure to

look and sound the horn was negligence *per se.* This case is obviously not in point.

The rule is well settled that care at crossings is the highest duty of motorists. In Mooney v. Kinder, 271 Pa. 485, at p. 488, 115 A. 826, it was said: "There is a higher degree of care due by the drivers of motor vehicles at all street crossings than at other points in the highway, but at such crossings as this, because of the perils to pedestrians using them under modern traffic conditions, the duty of care which is cast upon the driver of such a vehicle as that which defendant was driving, is of the highest degree." See Newman v. Protective M. S. Co., 298 Pa. 509, 148 A. 711; Johnson v. French, 291 Pa. 437, 140 A. 133; Gilles v. Leas, 282 Pa. 318, 127 A. 774; Huddy Cyclopedia of Automobile Law, 9th Ed. p. 32.

We are of the opinion, therefore, that the question of of the negligence of the defendant was properly submitted to the jury.

Appellant further contends that the court erred in failing to instruct the jury that, as a matter of law, plaintiff was guilty of contributory negligence in her failure to look to her left while crossing the street. It is again to be remembered here that the pedestrian traffic was unusually heavy. Whether plaintiff should have looked to the left is a question for the jury. "It is often impossible for this to be done at crowded intersections." Newman v. Protective Co., supra. Moreover, all vehicular traffic on that part of the roadway where the accident occurred was approaching the pedestrian crossing from the right, in respect to plaintiffs' position. Under the circumstances we cannot say that plaintiff was under a duty to look to her left. Indeed, it is contrary to common experience to find vehicles running contrary to one way traffic. "As a general rule, it is not contributory negligence per se for a pedestrian to look only in the direction from

which vehicular traffic may be expected to move in accordance with the law of the road; and, if such a person looks in one direction, and judging the highway reasonably safe for passage starts across, but is struck by a motor vehicle proceeding along the wrong side of the street, his negligence is not to be decided as a matter of law, but should be left to the jury.'' Christ v. Hill Metal & Roofing Co., 314 Pa. 375; Huddy Cyclopedia of Law, 9th Ed. p. 148; Mooney v. Kinder, supra. The cases cited by appellant in support of his contention were cases where plaintiff had failed to look either to the right or to the left, and for that reason are distinguishable.

Appellant further contends that there was no evidence on which the court could charge the jury that they might find damages for permanent injuries. Dr. Davies, plaintiff's witness, testified (37a): ''A. As it went on it became more or less chronic. There were times when she would be almost free from pain and then the pain would recur on any effort at motion. Q. Did this condition improve or did it persist? A. It evidently has not improved any......'' (p. 39a) ''Q. Whether or not there is any change in her condition in the way of improvement? A. I don't think there is very much improvement.'' Defendant's own medical expert who minimized the extent of plaintiff's injury admitted, when he was asked whether the ailment would continue into the future, that: ''There may be a little residue. Time will clear it up.''

We think this was sufficient evidence to sustain the charge as to permanent injuries.

It is also urged by appellant that the court failed to instruct the jury as to the present worth of such future disability as might be suffered by the plaintiff. On the contrary, the court did charge (117a): ''Any amount that you give him will be payable presently, will be paid right now, and if he should receive the

total amount, he would receive more than he would be entitled to, because he could put the total amount at interest, for instance, and as we said before, he is not entitled to that full amount, but it would be your duty to reduce it to its present worth.'' Although this statement was made with particular reference to damages recoverable by the husband, yet it sufficiently indicated to the jury that in either case the present worth would be less than the total damages. Moreover, at the close of the charge counsel for appellant failed to request the court that the instructions be amplified and according to appellees' paper book the question was not raised on the motion for a new trial. The failure of the court to adequately charge on the question of present worth has been held by our courts as constituting reversible error, but recently a more liberal attitude has been taken, as found in an excerpt from the opinion of Mr. Chief Justice MOSCHZISKER in the case of McCaffrey v. Schwartz, 285 Pa. 561, 132 A. 810, where he says: ''After deliberate consideration of the whole matter, we have now reached the conclusion that,......a mere failure to charge on the subject of the obligation of the jury to reduce its award of future payments, anticipated in a verdict, to their present worth, is not always held to be reversible error, particularly in the absence of a request so to charge or of any effort to call the trial judge's attention to a lack of such instructions. On the contrary, there may be cases where, under such circumstances, the default would amount to no more than an inadequacy; therefore, we wish it understood that this particular omission will no longer be dogmatically classed by us as a reversible error.''

It appears that the error, if any, was harmless. The award of the jury was $500 to the husband and $1,000 to the wife. Thirteen months had elapsed since the date of the injury at the time of the trial. If the ver-

dict was intended to include future damages, it certainly could not have been intended to cover anything more than a very limited period. The amount of the verdict shows that appellant was not injured and therefore, the assignment is not sustained: Walsh v. Altoona, 232 Pa. 479, 81 A. 551; Kerns v. Ripka, 85 Pa. Superior Ct. 97.

The tenth and eleventh assignments of error allege that the court erred in refusing to permit the following questions to be asked: "Q. Now when your car backed up, did you feel any shock or shudder of the car, or anything which would indicate to you that your car had hit something or someone?" and again, "Q. Whether or not you noticed any shock or vibration of the car when you backed up?" The questions undoubtedly were leading but assuming that the questions were properly asked, we do not see that their exclusion worked substantial harm to the defendant, particularly in view of the fact that it is not denied that defendant in fact struck the plaintiff.

The assignments of error are overruled and the judgments are severally affirmed.