## Bickel *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Grade crossing—Contributory negligence—Case for jury—" Stop, look and listen."*

It is the duty of the employees of a train approaching a crossing to give such signal as will protect the traveler if he is in the exercise of ordinary care. It is not a conclusive answer for a railroad company to say that the bell was rung or the whistle was sounded in reply to a charge that a train negligently approached a grade crossing, unless it

appears that under the circumstances of the case such signal was sufficient to give timely notice to travelers who were approaching the crossing on the highway. At such crossing the duties of the company and of the traveler are reciprocal. Each must approach the crossing with a due regard for the rights of the other, and when either fails to observe the care required, it is negligence for which the guilty party is responsible. Either party will only be absolved from the charge of negligence if he has done what the circumstances of that particular case required a prudent man to do.

In determining the duty of a person approaching a dangerous grade crossing with restive horses, regard must be had not only to the conduct of the driver under the circumstances, but that of the railroad company in not giving proper signals at a point where the driver would have heard them in time to save himself from being placed in a dangerous position.

Argued March 4, 1907. Appeal, No. 204, Jan. T., 1906, by defendant, from judgment of C. P. Berks Co., March T., 1905, No. 17, on verdict for plaintiff in case of Angeline F. Bickel v. The Pennsylvania Railroad Company. Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before ENDLICH, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $3,425. Defendant appealed.

*Error assigned* was in entering judgment upon the verdict.

*Cyrus G: Derr,* for appellant, cited : Blotz v. R. R. Co., 212 Pa. 154 ; Schun v. Penna. R. R. Co., 107 Pa. 8 ; Cohen v. Phila. & Reading Ry. Co., 211 Pa. 227 ; Gerety v. R. R. Co., 81 Pa. 274 ; Penna. R. R. Co. v. Goodman, 62 Pa. 329 ; Garlich v. Northern Pac. Ry. Co., 131 Fed. Repr. 837 ; Phila., etc., R. R. Co. v. Stinger, 78 Pa. 219 ; Black v. Bessemer & L. E. R. R. Co., 216 Pa. 173.

*Isaac Hiester,* for appellee, cited : Childs v. Penna. R. R. Co., 150 Pa. 73 ; Goggin v. R. R. Co., 43 Pitts. L. J. 151 ; Faust v. P. & R. Ry. Co., 191 Pa. 420 ; P. & R. R. R. Co. v. Killips, 88 Pa. 405 ; R. R. Co. v. Stinger, 78 Pa. 219 ; Penna.

R. R. Co. v. Weber, 72 Pa. 27; Patterson v. Ry. Co., 210 Pa. 47; Schum v. Penna. R. R. Co., 107 Pa. 8; Hoffmeister v. Penna. R. R. Co., 160 Pa. 568; Davidson v. Ry. Co., 179 Pa. 227; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213; Cromley v. Penna. R. R. Co., 208 Pa. 445; Schwarz v. Del., L. & W. R. R. Co., 211 Pa. 625; Breunninger v. Penna. R. R. Co., 9 Pa. Superior Ct. 461; Ely v. Ry. Co., 158 Pa. 233.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1907:

This is an action of trespass brought by the plaintiff to recover damages for the death of her husband who was killed by a collision with the defendant company's train at a grade crossing. In a charge, exceptionally clear and concededly adequate, the learned trial judge submitted the question of the defendant's negligence and the deceased's contributory negligence to the jury who returned a verdict for the plaintiff. A formal motion for a new trial was made but not pressed, and the learned counsel for the defendant company took a rule upon the plaintiff to show cause why judgment non obstante veredicto should not be entered for the defendant under the Act of April 22, 1905, P. L. 286. In an exhaustive opinion by the trial judge, he has reviewed at length the facts as well as the law applicable to the case, and has conclusively demonstrated that there was sufficient evidence to justify the court in submitting the case to the jury. The authorities cited amply sustain his view of the law, and the testimony to which he refers clearly shows that the case could not have been withdrawn from the jury on either of the two questions submitted for their consideration. The defendant company has, therefore, had its case considered twice by an able and thoroughly competent court, who heard the testimony and who dealt with every question which now appears upon this record. So satisfactory to the defendant's counsel was the case disposed of in the court below, that the single complaint in this court is that the trial court erred in not directing a verdict for the defendant, and subsequently, in not entering judgment for the defendant notwithstanding the verdict.

Under the testimony in the case, the defendant's negligence was clearly a question of fact for the jury. And it was made to turn upon the question whether the whistle was blown at

the whistle-post and the fireman rang the bell for the crossing at which the deceased was killed. The court, on request of defendant's counsel, instructed the jury that "if the defendant's engineman sounded the whistle at the whistle-post and the fireman rang the bell thence to the crossing at which the accident happened, the verdict must be for the defendant." In affirming that point, the learned court surely gave the defendant company all it was entitled to under the facts of the case. Notwithstanding the topography of the country, the character of the crossing and the obstructed view which the deceased had of the approaching train, the learned judge told the jury that the defendant company was relieved from liability if it blew the whistle at the post and rang the bell until the crossing was reached. Under the submission, the verdict establishes the fact that the engineer failed to give the signal at the whistle-post which, by making a rule requiring it, the defendant company shows that it regarded the signal at that place as necessary to protect the public who had occasion to use the crossing. The learned counsel for the defendant company contends that the testimony of its witnesses shows conclusively that the signal was given at the whistle-post, but we think the trial court's analysis of it clearly discloses that the engineer is the only witness who testifies positively that the signal was given. The testimony of the defendant's other witnesses is clearly open to the doubt and uncertainty which the trial judge points out in his opinion. We think the contradictions of the engineer warranted the jury in disregarding his testimony entirely on that point. Material parts of it are flatly contradicted by other witnesses who were corroborated by certain uncontroverted facts in the case. For the trial court under these circumstances to have instructed the jury that they should believe the testimony of the engineer and disregard all the other testimony in the case as to whether the signal was given at the post or not, would have been manifest error. As we have said, an analysis of all the testimony on this point, of the defendant as well as of the plaintiff, shows that the question was undoubtedly for the jury.

The learned judge, as we have seen, gave the jury positive instructions that if the whistle was sounded at the whistle-post and the fireman rang the bell thence to the crossing, the de-

fendant's employees had done their duty and the defendant company was relieved from liability for the death of the plaintiff's husband. · The learned court might have gone further and told the jury broadly that it was the duty of the defendant's employees in charge of the train to have given timely and sufficient warning of its approach to the crossing in view of the circumstances of the case, such as the character of the crossing, the ability of travelers to see an approaching train, the rate of speed of the train, etc., and that, failing to do so, the plaintiff, in the absence of negligence on the part of the deceased, was entitled to recover. While the law does not point out any particular mode or manner in which notice of trains approaching a crossing shall be given, it does require that some suitable and adequate means, adapted to the circumstances, shall be adopted and applied: STERRETT, J., in Philadelphia & Reading Railroad Co. v. Killips, 88 Pa. 405. In Ellis v. Lake Shore, etc., Railway Co., 138 Pa. 506, the defendant company submitted several points for instruction, its first point, which was negatived by the trial court, being as follows: " If the jury find from the evidence in this case that the engineer of the defendant company sounded the whistle at a proper distance, and rang the bell as they approached the road crossing, then the defendants have done their whole duty, and are guilty of no negligence, and there can be no recovery in this case." In sustaining this ruling, this court said (p. 519): " We do not think it was error to decline to affirm the defendant's first point. The vice of the point is that it assumed that the railroad company had performed its whole duty, provided the whistle was sounded and the bell rung at a proper distance from the crossing. But there was another element in the case which the jury were necessarily compelled to pass upon, viz.: the rate of speed at which the train approached the crossing. The character of the crossing itself was a circumstance which could not be ignored, and which necessarily affected the relative duties of both the plaintiff and the company. If it was a dangerous crossing, as was practically admitted on both sides, it was the duty of the plaintiff to exercise the more care in approaching it. At the same time, it was equally the duty of the defendant company to see that their trains passed at a reasonable rate of speed, proportioned to the danger. In other words, negli-

gence is the absence of care according to the circumstances, and must be measured by the apparent danger." In Childs v. Pennsylvania Railroad Co., 150 Pa. 73, the court discusses the rate of speed at which a railroad may run its trains in the open country and its duty to give signals in approaching a crossing. It is there said (p. 77): " While railroad companies may move their trains at such rate of speed as the character of their machinery and roadbed may make practicable, they must not forget that increased speed for the train means increased danger to those who must cross the tracks, and that increased care on their part to guard against accidents becomes a duty." After referring to the facts of the case, the court continues : " The question suggested by these facts is whether, at such a crossing, and with such a rate of speed, the bell can be heard far enough to be a proper method of giving warning. If it could be heard a quarter of a mile away, it would afford a trifle more than a quarter of a minute for the traveler to determine what to do, and to do it. If the whistle could be heard twice or three times as far, the time afforded the traveler to escape from danger would be twice or three times as great. If, for want of a few additional seconds of time, which another mode of giving warning would have afforded, property or life be destroyed, is it not for the jury to say whether or not the longer warning ought, under the circumstances, to have been given ? " In concluding the opinion, the learned judge says (p. 78): " We think there was one question clearly raised by the testimony which was exclusively for the jury, viz. : whether a train approaching a crossing, situated like that at Dark Run Lane, at a high rate of speed, can give sufficient notice of its approach by ringing a bell ? If they should find the fact to be, that a train moving at the rate of speed at which this train was running, would cover the distance between a point from which its bell could be heard at the crossing, and the place of crossing, in so short a time as to make the signal of little or no use to one in the act of crossing the track, then the failure to give notice by the whistle from a longer distance away would be negligence."

From these and other cases the rule is established that it is the duty of the employees of a train approaching a crossing to give such signal as will protect the traveler if he is in the exer-

cise of ordinary care. It is not a conclusive answer for a railroad company to say that the bell was rung or the whistle was sounded in reply to a charge that a train negligently approached a grade crossing, unless it appears that under the circumstances of the case such signal was sufficient to give timely notice to travelers who were approaching the crossing on the highway. At such crossing, the duties of the company and of the traveler are reciprocal. Each must approach the crossing with a due regard for the rights of the other, and when either fails to observe the care required, it is negligence for which the guilty party is responsible. Either party will only be absolved from the charge of negligence if he has done what the circumstances of that particular case required a prudent man to do.

The question of the contributory negligence of the deceased was likewise for the jury. Here, again, we are met with the testimony of the engineer, but again we are compelled to suggest that his veracity was on trial and was a question for the decision of the jury. Falsus in uno, falsus in omnibus is a maxim which applies to the testimony of the engineer. The testimony of some of the other witnesses is wholly irreconcilable with that of the engineer, and hence the duty imposed upon the jury to say whether or not he was mistaken as to the conduct of the deceased and his son when they approached the fatal crossing. In the absence of a similar experience, we cannot determine what our conduct would be if we were within a few yards of a grade crossing with a team of skittish horses and an approaching train sounding shrill blasts from its whistle was discovered turning a curve about 700 feet distant and traveling towards us at the rate of forty-five miles an hour. Whether we would back the horses, turn them to one side, or attempt to cross the track, or could control the team at all few men can tell until they are subjected to the perils of such a situation. A judge in his chambers or a lawyer in his office without the experience may surmise what he would do or what another ought to do under those circumstances, but it would simply be a guess on his part, lacking the confirmation of a practical test, and hence without the weight and deference due the finding of twelve intelligent men whose experience in the everyday affairs of life fit them more certainly to judge

of what a prudent man would do under such circumstances. Here, the deceased and his son were traveling on a highway almost parallel with the railroad and with their view of an approaching train obstructed by buildings, trees, etc., until they were within about sixty or seventy feet of the crossing, when they could see a train for a distance of about 750 feet. The crossing was approached on a highway about twelve feet wide and of ascending grade. Sixty-seven feet distant from the crossing was a branch of the Reading railroad which the travelers were required to cross before they reached the defendant's road. The train was traveling at a speed of at least forty-five miles an hour, which would have required possibly about ten seconds for it to have run 750 feet, from the place where it could first have been seen by the deceased to the crossing where it struck him. Conceding that the Reading road was seldom used, yet his duty required the deceased not to stop upon it, and hence he was within less than sixty-seven feet from the crossing and had not more than ten seconds "to determine what to do, and to do it." What a prudent man ought to do under those circumstances was clearly for the jury to say. If a proper signal had been given at the whistle-post 1,387 feet away, the chances are that the deceased and his son would have heard it and that they would not have been placed in this most dangerous position. In determining the duty of the deceased at this time, regard must be had not only to his own conduct, but that of the defendant company. As said in Bard v. Philadelphia & Reading Railway Co., 199 Pa. 94: "In determining the negligence of a plaintiff in a case of this character, it is often necessary to consider not only his conduct on the occasion but also that of the defendant. This was at the crossing of a street where both parties had a right to be. Each party had also the right to act with the belief that the other would exercise his right at the place in the manner and way his duty required him to do. . . . The plaintiff was justified in believing that the defendant's employees would perform their duty in this respect (observe the care required in approaching a grade crossing), and he could act on such belief without any imputation of negligence." The exact distance of the deceased from the crossing at the time he discovered the approaching train is not shown, but he must have been

very nearly committed to the act of crossing because his horses were across the defendant company's tracks when the engine struck the wagon " right opposite the seat." Considering the delay caused by the unruly conduct of his horses, as disclosed by the engineer's testimony, the deceased would have had no difficulty in passing the crossing in safety, had not the rapid approach of the train and the two shrill blasts from the whistle frightened the horses and made them unmanageable. To a horse unaccustomed to a steam whistle, there is nothing that will frighten it more than the successive blasts of the whistle of a locomotive in the near vicinity. When, therefore, we consider the character of this crossing, the conduct of the defendant company's employees, and the position of the deceased at the moment of his first warning of the approaching train, it is clear that the nature of his conduct on the occasion, whether negligent or otherwise, was under all the circumstances a question for the jury. It unquestionably was his duty to stop, look and listen for an approaching train at a proper place, and to continue to observe due care to prevent a collision until he had passed entirely beyond the company's track, yet the law presumes, in the absence of evidence to the contrary, that this duty was performed. The credibility of the engineer, as well as that of all the other witnesses, was for the jury, and the testimony being sufficient, the learned judge committed no error in submitting the case.

The assignment of error is overruled, and the judgment of the court below is affirmed.