Anstine et al. *v.* Pennsylvania Railroad
Company, Appellant, et al.

Argued May 28, 1941. Before SCHAFFER,. C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Spencer G. Nauman,* with him *W. E. Shissler* and *Willis F. Daniels,* for appellant.

*F. Brewster Wickersham,* of *Metzger & Wickersham* and *William H. Neely,* for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1941:

Plaintiffs, parents of John Brindle Anstine, a minor, in their own right and in his behalf, brought this action in trespass to recover compensation for damages

sustained as a result of a collision between a train, owned and operated by defendant company, and an automobile in which the minor was a guest passenger. Harry R. Davis, Jr., driver of the automobile, and his father, Harry R. Davis, the owner, were joined as defendants with the railroad company, but at the close of plaintiffs' case, a compulsory nonsuit as to Davis, Sr., was granted. After verdicts in favor of plaintiffs and against the defendant company, no return being made by the jury as to defendant, Davis, Jr., motions for a new trial and judgment n. o. v. were overruled. Upon the entry of judgments on the verdicts, these appeals were taken.

The primary question for our determination is: can it be declared as a matter of law that defendant railroad was not negligent in the operation of its train? Even more specifically, the question may be stated: can the court say as a matter of law that the signal given of the train's approach to the crossing was adequate? After having minutely examined the testimony, the exhibits and the physical facts and circumstances, we are firmly convinced that reasonable men would differ as to the adequacy of the signal, and, therefore, the court below did not err in submitting the case to the jury.

In considering the motion of defendant company for judgment non obstante veredicto, we have read the record, as we must, in the light most advantageous to plaintiffs, and resolved in their favor all doubts and conflicts therein. By so doing, the following facts are found: The accident happened at about 11 o'clock on the morning of October 29, 1938, on Route 222 in the village of New Providence, Lancaster County, where the single-track branch railroad of defendant company, running from Lancaster to Quarryville, intersects the highway at almost a right angle. The highway runs approximately north and south at this point and approaches the railroad track from the north on an ascending grade. The automobile was traveling south

and the only indications of the proximity of the cross-
ing to one driving in that direction were the usual rail-
road warning sign beside the highway approximately
300 feet north thereof and a "stop, look and listen" sign
about 10 feet from the track. Houses and trees line
both sides of the road for some considerable distance
up the grade to the crossing; and the track can be
seen only when within a very short distance of the
crossing by one driving south toward it. The train,
traveling westwardly and consisting of an engine and
tender running backward and drawing several freight
cars and a caboose, after striking the automobile, pushed
it along the track for about 110 feet before it was
brought to a stop, seriously injuring minor plaintiff.
Furthermore, at the time of the collision, the fireman,
sitting on the side of the engine cab toward which the
machine approached, had his back to the crossing.

A careful review of the evidence offered on behalf
of plaintiffs in regard to the warning given of the
approach of the train reveals that while there was
some conflict in the testimony as to whether or not
one or two blasts of the whistle were sounded prior
to the accident, as well as to the distance the automo-
bile was from the crossing when the only or final warn-
ing was given; nevertheless, they all practically agreed
that there was no warning whatever sounded for some
time before the automobile and the train collided. There
is positive testimony of three witnesses that they heard
two blasts of the engine whistle, the last of which was
about one minute or more before the accident. This
testimony, together with the other evidence that the
train was traveling toward the crossing at a speed
of about 15 miles per hour, clearly indicates, if believed,
that when the last blast was given, (i. e. a minute or
more before reaching the crossing) the train was at
least 1320 feet from the intersection. The physical facts
demonstrate that if the train was that distance from
the point where it crossed the highway, it was entirely
out of sight of the crossing, there being a curve in the

track about 200 feet therefrom. Moreover, there was testimony to indicate that the automobile shortly before and at the time of the collision was traveling at a speed of about 30 miles per hour. This, if true, would obviously indicate that the machine was at least a half mile—2,640 feet—from the crossing a minute or more before the accident, when, it was said, the last signal was given. Thus, by following the line of the railroad and the highway, this testimony, if believed, would indicate that there was a distance of at least 3,960 feet, or three-fourths of a mile, between the automobile and the train. Of course, it was then impossible to see the train from this position of the automobile on the highway. The record shows that the testimony of all these witnesses with respect to the failure to continue to signal the approach of the train was not merely of the negative type frequently criticized by this Court as insufficient, but was of a positive character based on actual and attentive observation. Therefore, if the Court were to say that the warning, testified by plaintiffs' witnesses to have been given, was adequate, under the circumstances here present, it would be a flagrant infringement upon the province of a jury to determine disputed facts. It cannot be said, as a matter of law, that a jury would not be justified in finding that there was a considerable interval between the last blast of the whistle and the collision, and that the lapse of such a period of time rendered the warning inadequate in view of the concealed nature of the crossing and the relative slow speed at which the train was moving. This is accentuated by the fact that the driver of the car and his guest passenger were strangers to this crossing. Furthermore, it must be borne in mind that "Whenever there is a conflict of testimony, or, for any cause, there is a reasonable doubt as to the facts, or as to the inference to be drawn from them, negligence is always a question for the jury": *Howett v. Phila. Wil. & Balt. R. R.*, 166 Pa. 607, 613; and that where there is affirmative evidence, even of one witness,

showing negligence, it is a question for a jury, regardless of the weight of the opposing proof: *Thomas v. Penna. Railroad Co.*, 275 Pa. 579, 582.

As to what constitutes adequate warning of the approach of a train to a public crossing, we said, in *Bickel v. Pennsylvania R. R. Co.*, 217 Pa. 456, 460: ". . . it was the duty of the defendant's employees in charge of the train to have given *timely* and *sufficient* warning of its approach to the crossing in view of the circumstances of the case, such as *the character of the crossing, the ability of travelers to see an approaching train, the rate of speed of the train, etc.* . . . While the law does not point out any particular mode or manner in which notice of trains approaching a crossing shall be given, it does require that some suitable and adequate means, *adapted to the circumstances,* shall be adopted and applied." (Italics added.)

It is true that decisions involving the adequacy of the signal of the railroad generally turn on whether the warning was given soon enough in view of the rapid movement of the train (see, for example, *Childs v. Pennsylvania R. R. Co.*, 150 Pa. 73; *Cummings v. Pennsylvania Railroad*, 304 Pa. 219), but, by the same token, the adequacy of the signal may just as well depend upon whether it was given too soon, in view of the retarded rate of speed of the train. In either event, the question is whether the warning is *timely* in view of all the circumstances. It cannot be said as a matter of law that the mere fact that the whistle was blown at some indefinite time prior to the accident discharged the duty of defendant company. In *Crane v. Penna. R. R. Co.*, 218 Pa. 560, it was said, (p. 568): "In the present case while there was agreement between the witnesses that the whistle of the engine was sounded at or near the whistling post, more than a half mile west of the crossing, there was very positive disagreement as to whether it was sounded more than once, or whether any signal by bell had been given. . . .

It could not be said as matter of law that the one whistle which witnesses on both sides agree was given, was an adequate warning; therefore it became a question for the jury to determine from all the evidence in the case whether the defendant had come short of its duty in this regard, and a submission of the question was unavoidable." And in *Mellon v. Lehigh Valley R. R.*, 282 Pa. 39, where this Court refused judgment for defendant n. o. v., it was categorically stated (p. 42): "Merely blowing the whistle eighteen hundred feet from the crossing, as plaintiff testified, could not be held a sufficient warning."

*Newhard v. P. R. R. Co.*, 153 Pa. 417, relied upon by counsel for defendant railroad, is not in point. The physical situation of the crossing was entirely different. The circumstances in that case that the crossing was in open country, that 202 feet therefrom not only was there a warning sign but also the railroad itself could be seen for 400 feet, and that 74 feet therefrom the railroad was visible for 990 feet, are completely overlooked by counsel. Moreover, the train in that case was moving at fifty miles per hour. Under those circumstances, this Court was of the opinion that there was no negligence on the part of the railroad, the whistle having been blown 1,300 feet from the crossing.

In the present case, there was a considerable conflict in the testimony, even to some extent on the side of the plaintiffs, as to the true facts surrounding the warning given of the train's approach and as to the distances the automobile and the train were from the crossing at the time such warning was sounded. However, it is the province of the jury to reconcile such differences, and determine which side shall prevail: *Lewis v. Pgh. Railways Co.*, 132 Pa. Superior Ct. 394, 399; *Danko v. Pittsburgh Rys. Co.*, 230 Pa. 295, 298. Such conflicts are not unusual, and while courts are not permitted to resolve them as a matter of law, the salutary power to grant a new trial remains in the

court, if the verdict is against the clear weight of the testimony. That is the best method that has been found to measure claims and obtain justice.

Defendant company further argues in support of its motion for judgment n. o. v. that the negligence of Davis, Jr., the driver of the automobile, was established as a matter of law by his failure to stop, look and listen before entering upon the tracks, and that this lack of due care is also to be imputed to the minor plaintiff. But the negligence of the driver is not to be imputed to a guest passenger who had no right to share in the control of the vehicle and no opportunity to do so: *Harris v. Oostdyk M. Trans. Corp.,* 340 Pa. 478. Nor is the guest himself deemed guilty of contributory negligence unless he has thoughtlessly disregarded his own safety and made no effort to control the operation of the vehicle in the face of known or obvious dangers: *Kilpatrick v. Phila. Rapid Transit Co.,* 290 Pa. 288. The minor plaintiff testified that he had no part in the management or control of the car and further that he was dozing at the time of the accident and for some time prior thereto. Under these circumstances, the question of his contributory negligence was for the jury to determine: *Loughrey v. Penna. R. R. Co.,* 284 Pa. 267; *Jerko v. Buffalo, R. & Pgh. Ry. Co.,* 275 Pa. 459; *Beck v. Director General of R. R.,* 268 Pa. 571. Especially is this true where the guest was unfamiliar with the locality: *Blaskey v. Penna. R. R. Co.,* 138 Pa. Superior Ct. 465. The fact that the minor plaintiff was asleep while the automobile was being operated does not convict him of contributory negligence as a matter of law; that, too, is a factor to be considered by the jury: *Frank v. Markley,* 315 Pa. 257.

The learned court below thus did not err in refusing defendant company's motion for judgment n. o. v. However, a new trial must be granted because of the improper admission in evidence of the rules of defendant railroad governing the movement of trains on its Lancaster-Quarryville Branch. These rules stated the num-

ber and length of whistle blasts to be given by a train nearing a highway, required in addition that the engine bell be set ringing when approaching a crossing, and provided with regard to speed that the train crew be "Prepared to stop within range of vision not exceeding fifteen miles an hour". The admission of these private rules promulgated by the railroad for the guidance of its employees in the protection of its property and the safety of those using its facilities, and the reiteration thereof in the oral charge of the trial court as though they were statements of law, were decidedly prejudicial to defendant company's case. The jury was directed thereby to judge the reasonableness of the operation of the train as it approached the crossing by a standard of care much greater and far more inflexible than that which the law requires.

Although the law does not point out any particular mode in which the warning is to be given and the adequacy thereof depends upon the circumstances *(Bickel v. Pennsylvania R. R. Co.,* supra), the jury was here permitted to infer negligence on the part of the railroad employees if the engine whistle was not blown four times, two long and two short, and the bell was not concurrently set ringing. And despite the settled rule that no inference of negligence can be drawn solely from the fact of even the rapid approach of a train to a grade crossing *(Ealy v. N. Y. Central R. R. Co.,* 333 Pa. 471; *Haller v. Pennsylvania R. R.,* 306 Pa. 98), the jury here might well have based its verdicts entirely on the circumstance that although the train was moving but 15 miles per hour, it could not be brought to a stop within the range of vision of the engineer. Irrespective of the admissibility of private rules of an employer governing the conduct of the employees in highly dangerous and unusual situations *(Dougherty v. Phila. & Reading R. R.,* 171 Pa. 457) or stating a duty which the law itself would require *(Toner v. Penna. R. R. Co.,* 263 Pa. 438), such are not definitive of the standard of care upon which liability is to be predi-

cated where they go beyond legal standards or where they are formulated for an entirely different purpose: *The Philadelphia and Reading Railroad Co. v. Spearen,* 47 Pa. 300. Here it was testified that the rule regulating the speed of the trains was designed to prevent collisions between trains on the Quarryville Branch, it being only a single-track line unprotected by block signals. Such a purpose has no relevency to speed in approaching highway intersections. There the superior right of travel, assuming an adequate warning, is in the railroad: *Newhard v. P. R. R. Co.,* supra.

Another trial error has been called to our attention. The jury returned a verdict in favor of plaintiffs against defendant railroad, but made no finding as to the other defendant, Harry R. Davis, Jr., who may have been guilty of negligence, since there was much testimony so to indicate. The trial court's attention was directed to this matter before the jury was discharged and he stated: "We interpret it to mean that the verdict is against the Pennsylvania Railroad and not against anybody else—any other defendant." This was purely guesswork on the part of the trial judge, and at a time when there was no necessity for him to indulge in any speculation. He should have resubmitted the matter to the jury, under proper instructions, in order that it might have indicated in its verdict what disposition was to be made insofar as the claim against defendant, Davis, Jr., was concerned.

Judgments reversed with a venire, and on a retrial of the case the defendants will be Pennsylvania Railroad Company and Harry R. Davis, Jr.

DISSENTING OPINION BY MR. CHIEF JUSTICE SCHAFFER:

At least five witnesses called by plaintiffs testified that the whistle was blown as the train approached the crossing. This being shown in plaintiffs' case, I think judgment should be entered for defendant railroad company.

Mr. Justice LINN and Mr. Justice PATTERSON concur in this dissent.