## Killen v. Pennsylvania Railroad Company, Appellant.

Argued October 14, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Bruce R. Martin,* with him *Dalzell, Pringle, Bredin & Martin,* for appellant.

*Joseph F. Weis* and *E. V. Buckley,* with them *Joseph F. Weis, Jr., Sheriff, Lindsay, Weis & McGinnis* and *Mercer & Buckley,* for appellees.

OPINION BY MR. JUSTICE BELL, January 11, 1954:

Each of the judgments is affirmed on the following opinion of Judge O'BRIEN, speaking for the Court en banc.

"Lloyd K. Killen and Mack E. Miller, while in the course of their employment as employees of the United States Postal Service, were riding in a postal mail car on defendant's train in the vicinity of Uhrichsville, Ohio, on the morning of October 27, 1948. The plaintiffs were paying passengers of the defendant railroad company. The plaintiffs sued the Pennsylvania Railroad Company for injuries sustained when the train collided with a truck, heavily laden with steel at Wolf's

Crossing. The Railroad Company brought in the additional defendants.

"The case of Mack E. Miller against the Railroad Company and the additional defendants was tried previously, resulting in a verdict against the Railroad Company alone. In that action the Railroad Company moved for judgment n.o.v. and for a new trial. When both motions were refused by the court below, the Railroad Company took an appeal to the Supreme Court (*Miller v. Pennsylvania Railroad Company*, 368 Pa. 507) where judgment n.o.v. was refused but a new trial was granted to all the parties. In refusing judgment n.o.v. the Supreme Court said at pages 512; 513: '. . . But the question still remains—considering the fog and the position of the truck when the flasher lights went on, was the defendant's warning timely and sufficient?'. '. . . If plaintiff's evidence clearly showed that the truck driver saw the flasher lights and ignored them, the railroad would have given timely and sufficient warning of the train's approach, the negligence of the truck driver would have been the proximate cause of the accident, and the Railroad Company would be entitled to a judgment n.o.v. The evidence on this point was confused, but we believe was sufficient to allow the jury to legitimately infer that the flasher lights could not have been seen by the truck driver; and therefore the court below properly refused defendant's motion for judgment n.o.v.'

"The *Miller* case was consolidated with the *Killen* case and both were tried before O'BRIEN, J. and a jury, resulting in verdicts for the plaintiffs against all of the defendants. The defendants filed motions for judgment n.o.v. and that matter is now before the court.

"We are bound in the consideration of such motions of the defendants for judgment n.o.v. to consider the testimony in the light most advantageous to the plain-

tiffs and resolving in their favor all doubts and conflicts: *Miller v. Hickey,* 368 Pa. 317; *McDonald v. Ferrebee,* 366 Pa. 543.

"The jury could have found, considering the testimony in the light most favorable to the plaintiff, the following facts: Shortly before the accident a bus traveling on U. S. Highway Route 36 in the westerly outskirts in the town of Uhrichsville, Ohio, came up behind a truck of the defendants' in a thick [very dense] fog and followed it for a distance of two to three miles at a speed of ten to twenty miles an hour until it approached Wolf's Crossing. The highway at this point runs north and south and the railroad east and west. The highway and the railroad meet at an angle of 24 degrees 30 minutes. There are two railroad tracks and the eastbound train was on the second or southerly track. The truck flashed the rear marker lights signaling stop and did stop at a point before entering the tracks beyond the point of the flasher lights, at which time the flasher lights began to operate. The driver of the truck looked both ways and started the truck proceeding in creeper gear. The train was being operated at a speed of 70 to 75 miles an hour and activated the flasher lights at a distance 3510 feet from the crossing. The truck proceeded over the crossing and when at a point on the east-bound southern track was struck by the train causing a blinding flash. No bell or whistle or any warning device was given by the train prior to the collision. The area was blanketed by a thick fog. The distance from the flasher signal on the north side of the crossing to the east bound track is a distance of 71 feet. The usual speed of the train at this point was 60 miles an hour. The red flasher lights were 21 candle power and the headlight of the locomotive was 550,000 candle power. The locomotive headlight could be seen when it was a

distance of about 75 feet from the crossing. The jury could have found from all the evidence that the driver of the truck had passed the first flashing signal before it commenced to flash. There was no evidence why the truck driver could not see the flashing signal on the other side of the tracks. There is no question of contributory negligence involved in these cases.

"There were two eye witnesses to this collision, Arlow K. Lewis and Lewis H. Rooks. Mr. Lewis was a bus driver for the Pennsylvania-Greyhound lines operating a bus on a run from Pittsburgh, Pennsylvania to Columbus, Ohio through Uhrichsville, Ohio, a town two and one-half or three miles from Wolf's Crossing. He testified that when he was leaving the western city limits of Uhrichsville he saw a truck loaded with steel. He drove behind it going about 10 to 20 miles per hour through a dense thick fog. The lights were on the bus and the truck as both proceeded on Route 36. When he came up to the crossing the flasher lights were working, and the truck driver, at about the same instant, flashed his marker lights indicating he was going to stop. The truck made a dead stop. Mr. Lewis could see the driver in the cab looking both ways and then proceed across the track when a blinding flash occurred. . . . 'Q. About how far were you from the track where the train came at the time that this signal went on? . . . A. I figure I was back 150 feet from the crossing, the nearest rail to me approximately 150 feet. That would be the north bound rail. I figure that is about how far I was back. . . . Q. Now, Mr. Lewis, can you tell us whether that truck when it stopped was between you and the flasher lights or not? A. I don't know whether it was between me and the flasher lights or not. Q. Can you tell whether that truck when it stopped was short of the railroad tracks or was on the railroad tracks? A. I said it was somewhere short of

the tracks between me and the railroad tracks.' . . .
'Q. Mr. Lewis, when your bus was brought to a stop
and the truck stopped you weren't able to tell whether
the cab of the tractor had passed the flasher lights or
not, were you? A. No. I don't know where his cab was
with respect to that.' . . . 'Q. How much distance did you
say was between the front of your bus and the rear of
the trailer when you were both stopped? A. Well, I
estimated about 32 to 35 feet, a bus length. Q. Didn't
you at the previous trial of this case testify as follows:
wasn't the following question asked you and didn't you
make this answer: "Q. About how far would you say,
Mr. Lewis, that you were from the track that the train
was on at the time you came to a stop? A. Approxi-
mately 125 feet. Q. About how far in front of you was
the truck when you came to a stop there? A. Oh, I
would say about 75 feet to 100. Q. About 75 feet to
100 in front of you? A. Yes. Q. Did it stop? Which
stopped 'first, the truck or your car? A. I would say
we both stopped momentarily, about the same time.' "
'Did you testify to that effect in the prior trial? A. I
can't remember, but if I did I just gave them as esti-
mates. Q. Would you say that that testimony that
you gave at the former trial, is that a correct state-
ment? A. Approximately the feet I gave is about right,
yes.'

"Mr. Rooks was a student bus driver seated behind
the driver, Mr. Lewis. His testimony was substan-
tially the same as Mr. Lewis's. When Mr. Rooks was
asked how far the back of the truck was to the bus
when the bus blinked its lights, he stated: 'A. I would
estimate two bus lengths, about 75 feet.' . . . 'Q. It could
have been a little less, might have been 100 feet, is that
correct? A. Yes. Q. What would be your best estimate
as to how close the front of the truck was [to the
closest rail] at the time that you thought it was either

stopped or close to stopped? A. My best estimate, ten feet.' . . . 'Q. . . . So that when you saw him blink his marker lights your bus was 150 to 175 feet, around in there, away from the flasher signals, is that right? A. Yes, sir.'

"Mr. Weis, on cross-examination, asked: 'Q. You weren't able to fix an exact position of the front of that truck at the time you saw the flasher lights? A. No. Q. And from where you sat you don't know when you first saw the flasher lights whether the cab of that truck had already passed the flasher light pole or not? A. No, sir.'

"Witnesses called by the defendants testified that they heard the train whistle. Witnesses for the plaintiff testified that they did not hear any train whistle. Mr. Thaddeus J. Tomalewski, a postal clerk riding in the same car as the plaintiffs, testified in behalf of the plaintiffs that he was listening for the train whistle as he used Wolf's Crossing to determine whether he could lock out his mail sacks or whether he would require assistance to get them ready for Dennison which was four or five miles from Wolf's Crossing. He testified that a train whistle did not blow for at least an interval approximately five minutes before the accident. His testimony was sufficient if believed by the jury to determine that no whistle was blowing: *Kindt v. Reading Co.*, 352 Pa. 419.

"The defendant Railroad Company, contends that the plaintiffs' own evidence shows that the truck driver drove on to the tracks in disregard of the flashing lights which were then operating and visible to him. . . . With respect to the testimony as to whether the truck driver could see the flasher lights, the Railroad Company argues that this case presents no evidence from which a jury could legitimately infer that the flasher lights could not have been seen by the truck

driver, as the testimony of the plaintiffs' own witnesses, Mr. Lewis and Mr. Rooks, shows that the flasher lights were visible for a distance of 150 feet to 175 feet, and that an examination of the maps and photographs in evidence shows that if the truck driver stopped with the front of his truck clear of the railroad tracks the front of the truck would be approximately even with the flasher lights. . . . Furthermore, since the plaintiffs' own witnesses proved that the fog was not sufficient to prevent the truck driver from seeing the flashing lights, the conclusion is inescapable[*] that the deceased truck driver saw the flashing lights north of the track but disregarded this warning and drove on to the tracks. . . .

"There is indeed force to what the defendant Railroad Company contends by this argument and upon this hypothesis reconstructed from the testimony of the witnesses, the uncontradicted testimony and the measurements, it is possible that such facts did exist at the time of the collision, and the defendant truck driver [drove] on to the tracks in disregard of the warning signal given by the flashing red lights. We cannot substitute our judgment for that of the jury, however, when there is credible evidence to sustain the verdict returned by them. As we stated before, this court is bound to take the facts in the light most favorable to the plaintiff and not substitute therefore the argument or the facts as reconstructed by the Railroad Company. . . .

"We believe the evidence in the instant case did warrant the jury in finding that the flasher lights [on the north side of the railroad tracks] could not have

---

* Defendant overlooks the fact that the density of and visibility in the fog often varies; plaintiffs' witness looking for the train did not see the very bright train headlight until the train was about 75 feet from the crossing.

been seen by the truck driver. . . . We are not able in a situation of this type, of course, to invoke the incontrovertible physical facts doctrine as the testimony and evidence is approximate and not fixed and determined with absolute certainty. [See *Hetzlein v. Johnstown Traction Co.*, 365 Pa. 360, 362-363, 75 A. 2d 533; *Cunningham v. P. R. R.*, 352 Pa. 571, 43 A. 2d 825.]

"The question of the railroad company's negligence was properly submitted to the jury. It is true that in a country district the speed of a railroad train is not negligence per se and that before a jury may consider whether a particular rate of speed constitutes negligence there must be evidence of special circumstances that render such speed excessive: *Ealy et ux., Appellants v. New York Central Railroad Company*, 333 Pa. 471. Mr. Justice BELL in the *Miller* case, supra, page 511, pointed out: 'In Rich Hill Coal Company v. Bashore, 334 Pa. 449, 473, 7 A. 2d 302, this Court said: " 'The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway or of both or without fault of anyone.' " 'Furthermore, as was so well said by Justice STERN in *Nebel v. Burrelli*, 352 Pa. 70, 71, 74, 41 A. 2d 873: "The mere happening of a collision between the vehicle of a common carrier and a vehicle under other control or management does not give rise to any inference of negligence on the part of the carrier. The rule of res ipsa loquitur does not apply to such an accident: Zaltouski v. Scranton Rwy. Co., 310 Pa. 531, 165 A. 847; Hughes v. Philadelphia Transportation Co., 154 Pa. Superior Ct. 162, 35 A. 2d 544 . . . . Our later cases are all to the effect that it is only where an accident to a passenger happens through defective appliances or means of transporta-

tion, such as tracks, cars, machinery or motive power, that the burden is cast upon defendant to exculpate itself from an inference of negligence; in all other cases the burden is upon the passenger to prove such negligence: Swink v. Philadelphia Rapid Transit Co., 277 Pa. 220, 120 A. 827; Zaltouski v. Scranton Rwy. Co., 310 Pa. 531, 534, 165 A. 847, 848; Dupont v. Pennsylvania R. R. Co., 337 Pa. 89, 91, 10 A. 2d 444, 445." '

"The plaintiffs contend that no whistle or warning was sounded in violation of the Ohio Code, Section 8853, which reads as follows: 'Bell and whistle on locomotive engine when and how operated.—Every company shall attach to each locomotive engine passing upon its road, a bell . . . and a steam or compressed air whistle. . . . the engineer or person in charge thereof, shall sound such whistle at a distance of at least 80 and not further than 100 rods from such crossing, and ring such bell continuously until the engine passes the crossing.' (719 v. 27; R. S. Section 336 Eff. June 26, 1941)

"The defendant, Railroad Company, contends that [failure to ring the bell is immaterial since] timely and adequate warning was given, as evidenced from the testimony of plaintiffs' witnesses, Lewis and Rooks, who stated that the flashing signals were operating at the crossing. It is true that the defendant Railroad Company is not required to give various types of warning. Mr. Chief Justice DREW in *Anstine et al. v. Pennsylvania R. R. Co.*, 342 Pa. 428 states: 'As to what constitutes adequate warning of the approach of a train to a public crossing, we said, in Bickel v. Pennsylvania R. R. Co., 217 Pa. 456, 460: ". . . it was the duty of the defendant's employees in charge of the train to have given timely and sufficient warning of its approach to the crossing in view of the circumstances of the case, such as the character of the crossing, the ability of

travelers to see an approaching train, the rate of speed of the train, etc. . . . While the law does not point out any particular mode or manner in which notice of trains approaching a crossing shall be given, it does require that some suitable and adequate means, adapted to the circumstances, shall be adopted and applied." . . . (see, for example, Childs v. Pennsylvania R. R. Co., 150 Pa. 73; Cummings v. Pennsylvania Railroad, 304 Pa. 219).'

"The trial judge submitted the question of timely and adequate warning under the circumstances to the jury for its consideration (See *Sanders v. Pennsylvania Railroad Company*, 336 Pa. 424).

"There is sufficient evidence to warrant the conclusion that the Railroad Company was negligent and that its negligence together with the negligence of the truck driver were the proximate cause of the injury to the plaintiffs. . . ."

Since neither of the additional defendants appealed from the verdicts rendered against them, it is unnecessary to discuss their liability.

Judgments affirmed.