James Oliver CONRAD and Suzanne Conrad Godot, Executors of the Estate of William O. Conrad, Deceased, Plaintiffs,

v.

The BALTIMORE & OHIO RAILROAD COMPANY, Defendant.

Civ. A. 11022.

United States District Court
W. D. Pennsylvania.

May 3, 1956.

Murrin & Murrin, Butler, Pa., for plaintiffs.

Vincent M. Casey, Margiotti & Casey, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

The fatal accident of which this litigation is concerned occurred on January 9, 1952 at the same crossing described in the case of Dostal v. Baltimore & O. R. Co., 3 Cir., 189 F.2d 352. There are some differences, however, in the character of the crossing which will be mentioned.

The accident with which we are concerned happened between 6:30 and 6:45 A.M. The roadway was wet, but there was no storm either of snow or rain. Visibility was variously described, but the evidence shows that it was cloudy.

There was one eye-witness to the accident. It was on the testimony of the eye-witness and the physical facts and circumstances surrounding the crossing that plaintiffs based their claim for relief. Plaintiffs' decedent was a guest passenger in a car owned and driven by Russell S. Moore. They were on their way to work when the Moore car was struck at the crossing by a Baltimore & Ohio locomotive proceeding from Butler to Pittsburgh.

Summarizing the witness Cooper's testimony, he stated that he also drove his car on Route 8 on the way to work, intending to make the turn at the crossing. He testified his speed was between fifty and sixty miles an hour, but finally fixed it at fifty-five miles per hour, based upon his observation of the speedometer in his car. He passed the train at the upper end of the bend in the road. From that point Route 8 is roughly parallel to defendant's tracks. The witness was emphatic in his statement that he heard no bell or whistle from the locomotive and that he did not know whether a bell was rung or a whistle blown. His reason was that he paid no attention, as he had in mind that the train was proceeding behind him towards the crossing over which he was to drive his car, and that as he knew the train was coming, he paid no attention to any sound. He intended to, and did, turn down from Route 8 on the easterly leg of the "Y". He stated that as he drove his car toward the "Y" and while on Route 8, he could see that the red flashing lights at the crossing were in operation. He also saw the car in which decedent was riding turn down the "Y" from Route 8 toward the crossing. The distance from Route 8 to the middle of the track is one hundred feet. The witness stated that when he turned his car down the "Y" and as he proceeded toward the track, he noticed that the flashing lights were still operating. However, at this point in his testimony there was some hesitancy on the part of the witness Cooper to state positively as to whether he saw the lights flashing as he drove down the "Y". The witness stated that he stopped his car four feet in back of the Moore car which in turn

was stopped ten to twelve feet from the south rail. At that point, the witness stated that the train was in view to his right as he approached the crossing. He stated that when he stopped his car and saw the train from his right it was from one hundred forty to two hundred feet away. His car was stationary for several seconds, that is, two or three seconds, when the witness noticed that the Moore car started to move forward. It continued forward, as did the locomotive, and the locomotive struck the Moore car in its approximate center.

Plaintiffs' evidence also pointed to the proposition that the easterly bank of the east leg, as well as the signal light standard, the signal light box and wire tended to obscure the view of the east leg of the "Y" toward the direction in which the train was coming. However, Cooper, while stationary and back of the Moore car, said he saw the headlight of the locomotive, and plaintiff James Conrad, who was familiar with the crossing, testified on this phase of the case that a burning headlight could no doubt be seen from that point. There were two sets of two lights each on the light pole south of the crossing facing the driver of the Moore car. One set of lights appeared to be facing more toward Pittsburgh than toward the Butler leg of the "Y". There was some evidence, too, that the lights could not be seen at a certain point as the car moved down the east leg of the "Y", but in this respect plaintiffs' evidence is largely a discussion of daytime view. The accident happened in the darkness. Cooper saw the flashing red lights from two hundred feet away and it is evident they were operating as Moore drove down the east leg.

▇▇▇▇ On discussion of the motion, plaintiffs' counsel indicated that he relied on speed and physical facts and surroundings showing that the crossing was dangerous, as being sufficient to take the case to the jury. On the issue of speed, the witness Cooper fixed the train speed at between forty and fifty miles an hour, indicating, however, that forty-five was his best estimate. However, he clearly brought out that he based the train speed upon the fact that he knew his own speed from observation of his speedometer and by comparison estimated the speed of the train. Defendant moved the court to strike the testimony of this witness as to the speed of the train on the authority of Sylvester v. Pennsylvania R. Co., 357 Pa. 213, 53 A.2d 537. On the authority of that case the testimony of this witness as to the speed of the train must be rejected and not considered, as his own experience in judging the speed was based on his experience in driving his car only. Nevertheless, assuming that his testimony as to the speed of the train is competent in this instance, it still does not show any excessive speed which was a proximate, or which could be held to be, a proximate cause of the collision. For instance, he passed the train on the curve. The train was in back of him, he says, when he noticed decedent's car turn down the "Y", approximately two hundred feet ahead of him. He still continued to the "Y", turned down, stopped his car, and at that point the train was still some one hundred forty to two hundred feet from the crossing. It cannot be concluded, nor can the jury be permitted to find, that under the testimony of this witness the speed of the train was excessive. We have a set of facts and circumstances in which the oncoming train was proceeding toward the crossing with the red flashing lights working. It was dark, so that the red flashing lights showed up clearly as they were seen by the witness Cooper a considerable distance away and while he was still on Route 8. For this purpose it cannot be assumed that the bell or whistle was not operating. The presumption is that the employees of the railroad performed their duty when the train was approaching the crossing. See Haverstick v. Pennsylvania R. Co., 171 Pa. 101, 32 A. 1128. This presumption means that plaintiffs must show negligence on the part of the defendant with respect to the operation of the train. No act of negligence on the part of the defendant was shown in plaintiffs' evidence.

To permit the case to go to the jury under plaintiffs' proof is to hold that the mere existence of the crossing, regardless of the operation of the train, is sufficient on which to base a finding of negligence. Such a proposition is not the law, however. See Miller v. Pennsylvania R. Co., 368 Pa. 507, 84 A.2d 200; Killen v. Pennsylvania R. Co., 376 Pa. 320, 102 A.2d 140; Bickel v. Pennsylvania R. Co., 217 Pa. 456, 66 A. 756; and Ealy v. New York Central R. Co., 333 Pa. 471, 5 A.2d 110.

■ Plaintiffs contend that the distance which the locomotive carried the Moore car along the tracks after the impact is evidence of excessive speed. The distance fixed was approximately six hundred feet. It is to be observed that plaintiffs' evidence is that the Moore car had stopped at the crossing and then moved in front of the oncoming train. Under plaintiffs' evidence, adequate warning of the approach of the train was given by the train crew. Under the circumstances, the distance the locomotive carried the car is insufficient on which to found a finding of negligence standing by itself. The other evidence as to speed is unfavorable to plaintiffs as mentioned above.

■ Thus in this case, contrary to the facts in Dostal v. Baltimore & O. R. Co., the flashing lights were in operation. Also, it must be presumed that the train crew was in the performance of its duty. There was no testimony as to the warnings, including lights, whistle, bell, except from the witness Cooper. The evidence, as to how far and what affected the view easterly up the track from the point at which the Moore car had stopped, goes to the issue of contributory negligence, which, of course, is not reached in the instant decision. If it be argued that the obstructions to a view easterly along the tracks is important as to whether or not the crossing is dangerous and thus of itself perhaps creating an issue for the jury, the answer is that required warnings were given, or in any event, plaintiffs have failed to show that they were not given.

This memorandum decision is filed and is regarded as comprising the findings of fact and conclusions of law as authorized under Rule 52(a), Fed.Rules Civ. Proc. 28 U.S.C. The order directing involuntary dismissal of the action under Rule 41(b) has been filed.